## KINSELL & al. vs. DAGGETT & al.

To constitute a *disseizin* the possession must have been hostile in its commencement — exclusive and adverse, and not a mixed possession. And whether it be of this character, is a question of fact to be found by the jury.

A grantee under the State may be *disseised* by one whose possession *commenced* when the title was in the State, and consequently when no disseizin could be done, such possession having been, in its inception, exclusive and adverse, and so *continued after the grant*.

One is not *estopped* from setting up a title by disseizin, in a lot of land extending beyond the *thread of the river*, acquired *subsequently* to his taking a deed bounding him *by the river*.

THIS was an action of trespass *quare clausum fregit*, for opening a mill-dam which had been built across *Madomak* river, in *Waldoborough*; and was tried before *Mellen, C. J., September* term, 1833.

It appeared that the plaintiffs were the owners of certain mills on the south side of said stream, which their grantors had erected twenty-nine years before, and in the same place where mills had been erected and maintained by them, and those under whom they claimed, for more than sixty years. A dam had also been kept up by them during said time, extending from the south shore to a great rock, lying some rods northwardly of the thread of the river, which dam at the erection of the last mills, 29 years ago, had been extended by them from the great rock to the north shore.

The defendants were owners of the north shore where they had mills which had been erected more than twenty years before by *Barnabas Freeman*, their grantor — at which time also, they built a dam from the great rock to the north shore, below the plaintiffs' dam, and by raising a head of water blew up that part of the plaintiffs' dam from the rock to the north shore, and it was carried away by the current.

Prior to *February 27th*, 1806, the lands upon both sides of the river, including the possessions of the parties, were owned by the *Commonwealth* of *Massachusetts*, at which time they were granted with other adjacent lands to *Lincoln Academy*, with the condition " that the said grantees or their assigns should lay out and

assign to each settler, who had settled thereon before the first day of *January*, 1784, one hundred acres of land, to be laid out so as best to include his improvements, and be least injurious to adjoining lands."

In 1809, the Trustees of *Lincoln Academy* conveyed on both sides of the river to *Josiah Stebbins, Joseph Farley* and *Kiah Bailey,* who, in 1811, conveyed on the north side of the river to *Barnabas Freeman,* the defendants' grantor, bounding him by the river.

In 1816, the plaintiffs' grantors received a deed from said *Stebbins, Farley* and *Bailey,* of the lands on the south side, bounding them by the river.

Prior to this, there had been a survey by one *Robinson* (the plaintiffs' grantors being present,) of the possessions of the parties, of which he made a plan, describing both as bounded by the river. This plan was referred to in the deed from *Stebbins* and others to the plaintiffs grantors.

It appeared that a fish-way had been opened in the dam at the thread of the river, at the joint expense of the owners on each side — and there was much evidence introduced tending on one side to show the exclusive and adverse occupancy and claim of the plaintiffs and their grantors of the dam from the south shore *to the great rock* — and on the other side tending to show that the occupancy had not been adverse.

The opening in the dam, which constituted the trespass complained of, was made by the defendants south of the great rock, but *north of the thread of the river* — and was done for the purpose, (and it was agreed to be necessary for that purpose) of letting off the water so that the dam north of the great rock might be repaired.

The counsel for the defendants requested the Court to instruct the jury :

1st. That the plaintiffs' grantors having erected the dam on the land of the *Commonwealth,* no disseizin was thereby committed.

2d. That the continuation of the dam in the same place, without any manifestation of a change of purpose or of conduct in the plaintiffs, was no disseizin of the successors or assigns of said *Commonwealth, viz:* the trustees of *Lincoln Academy.*

3d That to constitute such a disseizin as to prevent the owner from conveying it by deed, the possession must be hostile in its commencement, must be exclusive and adverse ; and that, a mixt possession will not constitute such a disseizin.

4th. That the dam in this case *being used in common* by the plaintiffs and defendants, and their grantors, and being mutually beneficial, it had not been so exclusively used by the former as to constitute a title by disseizin.

5th. That *Kinsell*, in 1816, by taking a deed from the trustees of the Academy or their assigns, pursuant to a resolve of the Legislature of *Massachusetts*, of a lot of land defined by metes and bounds, virtually admitted that he had no claim, beyond the bounds contained in his deed, and was thereby estopped to claim beyond them.

6th. That if *Kinsell*, the grantor of *Kinsell*, one of the plaintiffs, conveyed his lot by metes and bounds, excluding the land north of the thread of the river, he could not claim beyond those bounds, in consequence of the disseizin of his grantor.

As to the first request, the presiding Judge instructed the jury, that no disseizin of the *Commonwealth* of *Massachusetts* was committed, by the erection of the dam and continuance of it, while the land belonged to the *Commonwealth*. As to the 2d request, he instructed the jury, that the continuance of the dam after the *Commonwealth* had conveyed away the title, without any manifestation of change of purpose or conduct in the plaintiffs, was a disseizin of the owner or owners, if the continuance of it was open, and exclusive, and adverse to the rights and claims of such owner or owners, and claiming it himself. To the 3d request, the jury were instructed, that a disseizin of those who are capable of being disseised, must be hostile in its commencement, to the rights of the true owners ; and that a mixt possession will not constitute a disseizin. As to the 4th request, the Judge declined giving any instruction, because the request referred, not to a *principle of law*, but to *contested facts*, about which much evidence had been given. To the 5th, he gave the instruction requested, as to the extent of the title under the deed from the trustees of the Academy, and that the plaintiffs were estopped to claim under their deeds, beyond the bounds named therein — but he fur-

ther instructed them, that the plaintiffs could, after the date of the deed, commit a disseizin of the true owner or owners of the land, covered by that part of the dam which extended from the thread of the river to the rock, and was not conveyed by the deed, and that if they did commit such disseizin, prior to the conveyance of *John Freeman* to the defendants in 1824, and continued the same until after the conveyance was made, then nothing passed by the same deed to them. To the 6th request the Judge instructed the jury, that neither *Kinsell* nor his grantees, could claim the land between the *thread of the river* and the *rock*, under the deed from *Stebbins* and *Bailey* — but if there was a continued disseizin of the owner or owners of such land, either by the father or his grantees, before and at the time the defendants received their deed from *Freeman*, then such deed was inoperative. The verdict was for the plaintiffs, and was to stand or be set aside, according to the opinion of the Court upon the foregoing instructions.

*Greenleaf* and *Bulfinch* submitted an argument for the defendants in writing, of which the following is a brief abstract.

1. Here was no title in the plaintiffs by disseizin — Because, 1. The grant of the *Commonwealth* created a trust estate, which rendered the possession of the *cestui que trust* lawful — 2. The survey being made under authority of the State, and with the assent of the settler, was in the *nature of an office found*, and *operated a surrender* of all possession beyond the limits thus established — 3. Because here was evidence only of a concurrent possession, at farthest — 4. Because the dam being originally erected, or at least kept up by consent of the *Commonwealth*, the mill act operated to give the right to flow, and, as incident thereto, the right to continue the dam — 5. Because the *Commonwealth*, by its agents, entered in 1815, which entry enured to purge any disseizin, for the benefit of its grantees.

2. If the plaintiffs had any right beyond the thread of the river, it was an easement only, and not a fee; for which the remedy should have been *case* and not *trespass*.

3. The facts disclosed in the report, show a case of mutual and concurrent rights, in both parties ; and a *necessity* fully justifying the defendants in doing the act complained of.

They also cited the following authorities : *Knox* v. *Pickering*,

7 *Greenl.* 106; *Lapish* v. *Bangor Bank*, 8 *Greenl.* 85; *Dunlap* v. *Stetson*, 4 *Mason*, 349; *Sargent* v. *Simpson*, 8 *Greenl.* 148; 3 *Mass.* 573; *Lapish* v. *Wells*, 6 *Greenl.* 175; 2 *Merivale* 359; 7 *Bac. Abr.* 185; *Little* v. *Libby*, 2 *Greenl.* 242; *Brown* v. *Gay*, 3 *Greenl.* 126; *Hetherington* v. *Vane*, 4 *B. & A.* 428; *Boston & Roxbury Mill Corporation* v. *Newman*, 12 *Pick.* 467; *Domat's Civil Law*, book 1, *tit.* 12; *Winter* v. *Brockwell*, 8 *East*, 308; *Phillips Academy* v. *King*, 12 *Mass.* 546; *Angel on Water Courses*, 70; *Angel on Adverse Enjoyments*, 92; *Boynton* v. *Reed*, 9 *Pick.* 528; *Ward* v. *Bartholomew*, 6 *Pick.* 415; *Tinkham* v. *Arnold*, 3 *Greenl.* 120; *Van Allen* v. *Rogers*, 1 *Johns. Cas.* 33; *Clap* v. *Draper*, 4 *Mass.* 266: *Robinson* v. *Swett & al.* 3 *Greenl.* 325; *Jackson* v. *De Watts*, 7 *Johns.* 157; *Fox & al.* v. *Widgery*, 4 *Greenl.* 218; *Hyatt* v. *Wood*, 4 *Johns.* 150.

*Fessenden*, for the plaintiff, cited *Fox* v. *Widgery*, 4 *Greenl.* 214; *Parker* v. *Baldwin*, 11 *East*, 490; 8 *Dane's Abr.* 428; 5 *Dane*, 568; *Coolidge* v. *Learned*, 8 *Pick.* 504; *Cutts & al.* v. *Spring & al.* 15 *Mass.* 135; *Cutts* v. *King*, 5 *Greenl.* 482; *Hathorne* v. *Haines*, 1 *Greenl.* 238; *Boston Mill Dam Corp.* v. *Bulfinch*, 6 *Mass.* 229; *Hall* v. *Leonard & al.* 1 *Pick.* 27; *Cummings* v. *Wyman*, 10 *Mass.* 464; *Brown* v. *Wood & ux.* 17 *Mass.* 68; *Tyler* v. *Hammond*, 11 *Pick.* 193; *Chapman* v. *Gray*, 15 *Mass.* 445.

PARRIS J., at a subsequent term, delivered the opinion of the Court.

We are not called upon to weigh the evidence in this case, as the motion to set aside the verdict, because it was not warranted by the evidence, has been withdrawn. Our only inquiry is as to the correctness of the instructions given to the jury; and whether those requested by the defendants, and not given, were properly withheld.

The plaintiffs' dam was built in 1804, extending quite across the river; but inasmuch as the title was then in the Commonwealth, the erection and continuance of the dam did not operate as a disseizin, and so the jury were instructed.

The grant from the Commonwealth to the trustees of Lincoln Academy, in 1806, passed the legal title, notwithstanding the possession of the occupants. *Barnabas Freeman* was, and had been for many years in possession of the north side of the river, and the conveyance to him in 1811 confirmed his title.

*Kinsell's* dam, however, covered a portion of the tract included in *Freeman's* deed, and although the erecting or maintaining the dam would not operate a disseizin of the Commonwealth, while the fee remained there, yet it might so operate after the conveyance to an individual.

Whether the Lincoln Academy held the land on the north side of the river in trust for *Freeman*, or otherwise, subsequent to the conveyance from the Commonwealth, there can be no question but an open and exclusive possession of any portion of it by *Kinsell*, claiming it as his own, and holding it adversely to the rights and claims of all others would be a disseizin of the owner, whether that owner be *Freeman* or the trustees of Lincoln Academy.

If *Kinsell* continued the dam across the channel and to the north bank of the river subsequent to the conveyance from the Commonwealth; if he occupied it openly, exclusively and adversely to the rights and claims of all others, claiming the right in himself, in our judgment, it comes fully up to a disseizin; and we cannot perceive how this is to be avoided by the fact that he had thus occupied it while the fee was in the State. The defendants contended at the trial, and requested to have the jury instructed, that there could be no disseizin without a manifestation of change of purpose, or of conduct in the person holding possession. What change could there be that would more effectually deprive the true owner of the enjoyment of his estate, or be more indicative of the intentions of the intruder upon his rights? Holding exclusively and adversely, and openly, are the highest acts in the power of the disseisor to indicate his intentions; — and if he thus hold prior to the conveyance from the State, what more could he do subsequently, to constitute a disseizin. Suppose he had been in the exclusive possession of the whole lot at the time of the grant to Lincoln Academy, and he had continued to occupy and improve it thereafterwards for upwards of six years, greatly

enhancing its value by his labor and expenditures, would he not have been entitled to the value of his improvements under our statute ?    Or if he had thus continued in possession for upwards of twenty years, would not the right of entry have been tolled ?

Whether *Kinsell* did hold openly, exclusively and adversely, was a question of fact for the decision of the jury.    We think the instructions given by the Court, in answer to the defendants' second request, were correct.

The jury were also instructed that a disseizin of those who are capable of being disseised, must be hostile in its commencement to the rights of the true owner, and that a mixed possession will not constitute a disseizin.

As the jury found for the plaintiffs, they must have found that *Kinsell's* possession was not in submission to the rights of the defendants' grantor, or under an acknowledgment of his claim; that it was hostile and exclusive, that is, holding him out, not permitting him to enjoy even a mixed possession.    This was clearly a disseizin, and, during its continuance, the disseisee could make no valid conveyance of that portion of the premises thus adversely held by *Kinsell*.

The law, as contended for in the defendants' fourth request, would have been applicable if the facts assumed had been proved. But the jury have negatived the facts.    They have found that the dam was not used in common by the plaintiffs and *Freeman*, but used by the plaintiffs exclusively and adversely to *Freeman*; and it was not within the province of the Court to instruct the jury as to the facts.    The request was, that the jury might be instructed that the dam had not been so exclusively used by the plaintiffs as to constitute a title by disseizin.

How the dam had been used was the important fact to be decided.    The Court left that to the jury, at the same time instructing them that in order to constitute a disseizin, the plaintiffs' possession must have been hostile in its commencement, exclusive and adverse, and that a mixed possession would not constitute disseizin.    If the Court had gone further and responded affirmatively to the defendant's fourth request, it would have been encroaching upon the rights of the jury, and afforded a just ground of complaint to the adverse party.

The deed to *Kinsell*, in 1816, bounding him by the river, carried him to the channel and no further, and even if he had claimed further, the trustees of Lincoln Academy or their assigns could grant him nothing beyond, as they had previously granted the residue to *Barnabas Freeman*, in 1811. But *Kinsell's* taking this deed bounding him by the channel of the river, did not estop or disqualify him forever thereafter from disseizing *Freeman*.

He might the next day, as well as the day previous, have forcibly entered as a disseisor upon the whole of *Freeman's* lot, ousted him of his possession, and held him out, and *Freeman*, in order to have regained possession by writ of entry must have considered it a disseizin.

If, as the defendants contended under their fifth and sixth requests, *Kinsell*, by taking his deed in 1816, is estopped to claim beyond the bounds of his deed, how far is that estoppel to operate ? Certainly not to defeat rights subsequently acquired.

*Kinsell* might extend his bounds by purchase, or he might acquire rights by occupancy, which could in no way be affected by his former conveyance ; and if subsequent to that conveyance, he disseised *Freeman*, and that disseizin was continued up to the time when the latter conveyed to the defendant, it is clear that such conveyance was inoperative, so far as it related to that portion of the premises of which the grantor was disseised.

Upon a critical examination of the instructions given to the jury, we are unable to perceive any thing erroneous or which is not clearly in accordance with well established and settled principles. Neither do we perceive that any of the instructions requested by the defendants were improperly withheld. Upon most, if not all the questions of law raised in the defence, the charge of the Court was in accordance with the views of the defendants ; and if more full or explicit instructions were desired, it was incumbent on the party wishing them to request that they should be given. Unless that was done, the omission to instruct upon any particular point, or in any particular manner, is not a cause for setting aside the verdict.

From the whole case, it is manifest, that the jury found, that *Freeman* was disseised of that portion of the dam extending from the channel to the rock, when he conveyed to *Bulfinch*, in 1824,

and if that fact was properly found, there is no sufficient reason, appearing in the report, why judgment should not be rendered on the verdict.

The counsel for the plaintiffs now contends that they, and those under whom they claim, having been in possession of the place where the dam is situated for upwards of sixty years, a grant from the Commonwealth is to be presumed.

That question was not raised at the trial. The plaintiffs then reposed upon the fact of a disseizin, and as the Commonwealth could not be disseised, the Court confined both parties to proof subsequent to 1806, when the grant was made to Lincoln Academy.

The Judge was not called upon to rule whether a grant from the State could be presumed, and the parties, particularly the defendants, had no opportunity to offer evidence, if they could, to rebut the presumption. There are many authorities tending to support this position; such as *The Mayor of Hull* v. *Horner,* *Cowp.* 102; *Eldridge* v. *Knott, ibid.* 214; *Roe* v. *Ireland,* 11 *East,* 280; *Goodtitle* v. *Baldwin, ibid.* 488; *Ward* v. *Bartholomew,* 6 *Pick.* 415; 3 *Stark. Ev.* 1221; *Roscoe on Ev.* 17. But as the question is not raised in the report, and its decision would not affect the result, we forbear to enter upon its discussion.